## IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY MARYLAND

**CANDACE ALSTON**, *an individual*                              \*
10012 Cedarhollow Lane                                            \*
Largo, Maryland 20774                                            \*
                                                             \*
   *on behalf of themselves and*                  \*
   *all others similarly situated*                 \*
                                                             \*
   Plaintiffs,                                     \*
                                                             \*
v.                                                               \*    Case No. CAL15-25268
                                                             \*
**EQUIFAX INFORMATION SERVICES, LLC**                            \*
**Serve**: CSC-Lawyers Incorp Srvc Co.                           \*
7 Saint Paul Street, Suite 820                                   \*
Baltimore, Maryland 21202                                        \*
                                                             \*
   Defendant,                                      \*
                                                             \*
**EXPERIAN INFORMATION SOLUTIONS, INC**                          \*
**Serve**: The Corporation Trust Incorporated                    \*
351 West Camden Street                                           \*
Baltimore, Maryland 21201                                        \*
                                                             \*
   Defendant,                                      \*
                                                             \*
**TRANSUNION, LLC**                                              \*
**Serve**: CSC-Lawyers Incorp Srvc Co.                           \*
7 Saint Paul Street, Suite 820                                   \*
Baltimore, Maryland 21202                                        \*
                                                             \*
   Defendant,                                      \*
                                                             \*
**WELLS FARGO BANK, NAT'L ASSOC.**                               \*
**Serve**: CSC-Lawyers Incorp Srvc Co.                           \*
7 Saint Paul Street, Suite 820                                   \*
Baltimore, Maryland 21202                                        \*
                                                             \*
   Defendant.                                      \*

PR GEO CO MD # 99
2015 SEP 14 AN 10: 04
Clerk of the
Circuit Court

Case: L15-25268
NEW CASE/PRO SE
CV CLERK FEE-                    80.00
MD LEGAL SERV                   55.00
RIF - NEW CAS                   30.00
TOTAL                          165.00
Rec# PG11        Rcpt # 8277
SJH    APH        Blk # 862
Sep 14, 2015              10:23 am

### CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, Candace Alston, on behalf of herself and all others

similarly situated, bring this complaint against the Defendants Equifax Information Services,

LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian") Trans Union, LLC ("Transunion") and Wells Fargo Bank, N.A. ("Wells Fargo"), and alleges as follows:

### PRELIMINARY STATEMENT

1.   This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq*. ("FCRA").

### PARTIES

2.   The Plaintiff is a natural person and a "consumer" as defined by FCRA.

3.   Equifax is a "consumer reporting agency" or "CRA" as defined by FCRA.

4.   Experian is a "consumer reporting agency" or "CRA" as defined by FCRA.

5.   Trans Union is a "consumer reporting agency" or "CRA" as defined by FCRA.

6.   Wells Fargo is a furnisher of information as contemplated by FCRA.

### FACTS

7.   On November 12, 2010 Ms. Alston obtained a mortgage loan from Monarch Bank ("Monarch") to purchase 7929 Mandan Rd, Greenbelt, Maryland ("Property"). In exchange for the mortgage loan Ms. Alston executed a promissory note ("Note") to the benefit of Monarch.

8.   The mortgage loan transaction was executed under contentious circumstances which resulted in an ongoing dispute between Ms. Alston and Monarch concerning the terms of the loan.

9.   Wells Fargo claims to have acquired the servicing and ownership of the loan although the essential loan document, the Note, was endorsed to Bank of America.

10.   Further complicating the matter, Monarch continued to send Ms. Alston mortgage statements wherein Monarch demanded monthly payments be made to Monarch.

2

11.     Ms. Alston submitted monthly payments to Monarch instead of sending payments to Wells Fargo.

12.     Although Ms. Alston sent payments to Monarch, the payments were conditioned on Monarch accepting amended terms to the Deed of Trust.

13.     Monarch did not negotiate any of Ms. Alston's payments until it received Ms. Alston's payment in August 2011.

14.     The August 2011 payment was a cashier's check in the amount of $6,492.24, which was the sum total of eight monthly mortgage payments.

15.     Monarch endorsed and transferred the August 2011 cashier's check to Wells Fargo, who reported the account to the CRAs as paid and current for August 2011.

16.     Despite reporting the mortgage account as paid and current as of August 2011, Wells Fargo reported Ms. Alston as 180 days delinquent for September 2011.

17.     Ms. Alston disputed Wells Fargo's reporting for Sept 2011 with the CRAs.

18.     The Defendants verified their reporting of August 2011 as current and September 2011 as delinquent 180 days as accurate.

19.     Defendants continued reporting the payment history in the above fashion until October 2013, December 2013 or February 2014.

### WELLS FAROG & EQUIFAX

20.     After a year elapsed from Ms. Alston's last dispute to Equifax of the Wells Fargo account, she submitted another dispute letter dated September 7, 2013 where she demonstrated the Monarch and Wells Fargo account were the same accounts and being reported in a conflicting manner. She explained with supporting documentations that the two accounts contained the same terms but Monarch was reporting her as paid on time while Wells

3

Fargo was reporting her in 120+ day delinquent status.

21.     Upon information and belief Equifax did not forward a notice of dispute following its reception of Ms. Alston's dispute letter dated September 7, 2013. Ms. Alston did not receive a Reinvestigation Result from Equifax for her September 2013 dispute.

22.     On October 13, 2013 Ms. Alston obtained her Equifax report and discovered that Equifax provided Wells Fargo with a copy of Ms. Alston's credit report on October 10, 2013. Equifax made this disclosure for Wells Fargo to perform an account review despite having knowledge that Wells Fargo claimed to have transferred the loan in November 2011.[1]

23.     Although Equifax did not provide Plaintiff with the results of the investigation of her September 2013 dispute, Equifax began reporting Ms. Alston's 81-month payment history as Pays or Paid as Agreed for June 2011 thru November 2011. Additionally, the Wells Fargo account was no longer being reported in the Negative Information section of Ms. Alston's credit file. Despite reporting the payment history as Current for June thru November 2011, Equifax inexplicably continued to report the Status as 120+ days past due.

24.     In a dispute letter dated December 16, 2013 Ms. Alston pointed out that Equifax was reporting the account as paid as agreed in the 81-month payment history while simultaneously reporting the Current Status as 120+ days past due. She concluded her letter with a request for Equifax to change the Current Status to Pays or Paid as Agreed.

25.     After receiving her December 16th dispute letter, Equifax stopped reporting the 81-Month Payment History as Pays or Paid as Agreed for each month and began reporting it as "No 81-Month Payment Data available for display." Equifax's reinvestigation results dated

---

[1]Previously, on or about April 6, 2013, Equifax provided Wells Fargo with a copy of Ms. Alston's credit report. Equifax disclosed Ms. Alston's credit report for Wells Fargo to perform an account review despite reporting that Wells Fargo transferred Ms. Alston's loan in November 2011.

4

January 21, 2014 specifically stated "[t]here is no historical account information currently on this account" and that the "creditor has verified ... the prior paying history [and the current status] is being reported correctly."

26.     On or about February 26, 2014 Ms. Alston sent another dispute letter to Equifax in which she again pointed out the Wells Fargo and Monarch mortgage accounts were the same mortgage account. Enclosed with the letter was proof -- checks and IRS mortgage interest statement -- that the Monarch account was paid in 2011. Going further Ms. Alston provided an email that indicated Monarch Bank forwarded funds to Wells Fargo in August 2011. In her letter she specifically requested Equifax to investigate whether Wells Fargo received any funds from the August 2011 payment to Monarch and to inquire whether Wells Fargo should consider "the account delinquent if Monarch deposited, cashed or otherwise negotiated [Alston's] mortgage payments." Ms. Alston even included a $1,000 check to compensate Equifax to conduct a thorough investigation that involved more than Equifax parroting Wells Fargo's response.

27.     Equifax issued its Results of its Reinvestigation on April 9, 2014 stating that it verified with Wells Fargo that the item was being reported correctly.

28.     Ms. Alston disputed the reporting again on April 22, 2014. The dispute stated that the Note was initially endorsed to Bank of America and in July 2011 an endorsement to Wells Fargo appeared on the Note. The dispute further announced that Wells Fargo states it "is unaware of the date on which it was endorsed to Wells Fargo." The dispute then talked about the August 2011 payment of $6,492.24 to Monarch and explained the Monarch and Wells Fargo were one in the same for purposes of Ms. Alston's loan.

29.     Ms. Alston followed up with a supplemental dispute on May 12, 2014 in which

5

she specifically disputed the August 2011, September 2011 and October 2011 payment history. The basis of the dispute was that Equifax stopped reporting the delinquencies in the account's payment history but still reported the Status as 120+ days late. She also enclosed documents demonstrating that Wells Fargo was in possession of the cashier's check and it was endorsed to Wells Fargo.

30. On June 10, 2014 Equifax responded with its Reinvestigation Results where it stated the "account is not currently showing late payments for august, september, october 2011" but did not address its reporting of the Status as 120 days Past Due.

31. Ms. Alston responded by letter dated July 22, 2014 where she pointed out that the account should not be in the Status of 120 days late if the account had no late payments as of October 2011.

32. Equifax responded on August 13, 2014 with its reinvestigation results, which asserted that Wells Fargo had verified the current status as being reported correctly.

33. On February 26, 2015 Ms. Alston wrote to Equifax in which, amongst other things, she requested the following statement be added to her account: **The Current Status of this account is being reported incorrectly. The 81-Month payment history is accurately reporting the payment history of this account and shows that the account was Paid as Agreed from November 2010 to July 2014.**

34. Upon information and belief Equifax has never added Ms. Alston's statement of dispute to the Wells Fargo mortgage account. On April 4, 2015 Ms. Alston obtained her credit report and observed that her statement of dispute was not included on the account. Instead the credit report was now reporting the payment history as delinquent 150 days in July, Current in August, 180 days late in September and October of 2011.

6

35.     Equifax's foregoing reportings of the Wells Fargo delinquent mortgage account are false. Ms. Alston has made each and every payment to Monarch and either had no legal duty to pay Wells Fargo or Monarch forwarded the payment to Wells Fargo.

36.     Equifax has knowledge that:

a.      The promissory note was endorsed to Bank of America;

b.      Monarch Bank was sending Mortgage Statements to Ms. Alston;

c.      Ms. Alston was making mortgage payments to Monarch;

d.      Monarch endorsed Ms. Alston's August 2011 mortgage payment to Wells Fargo.

e.      Wells Fargo reported to Equifax that the mortgage was paid for the month of August 2011.

f.      Monarch issued an IRS mortgage interest statement that reflected Ms. Alston made twelve mortgage payments to Monarch in 2011.

g.      Both Monarch and Wells Fargo were reporting mortgage accounts to Equifax as being opened in November 2010, as having an original balance of $102,212 and as having the same principal and interest mortgage payment amount.

h.      Monarch is reporting to Equifax that Ms. Alston is current for the same time period that Wells Fargo is reporting Ms. Alston as delinquent.

37.     Equifax had actual knowledge that the Wells Fargo mortgage account was inaccurate and deliberately chose to ignore and permit reporting of the inaccurate account.

38.     Ms. Alston struggled with her credit during the time period related to the dispute in this action. Based upon information and belief, Equifax provided inaccurate credit

7

reports containing the Wells Fargo mortgage account to numerous entities, including Capital

One on April 16, 2014 and February 17, 2015; Navy Federal Credit Union on April 23, 2014,

May 24, 2014 and December 30, 2014; DTC Coastal Employees Credit Union on June 20,

2014 and Washington Gas on November 19, 2014.

## WELLS FAROG & EXPERIAN

39.    Ms. Alston sent Experian a dispute letter dated September 21, 2013 in which

she requested the Wells Fargo account be deleted. In support of her request she stated Wells

Fargo was not legally entitled collect payment, so she was sending her payments to Monarch

instead of Wells Fargo. She further stated that Monarch forwarded a $6,494 payment to Wells

Fargo but that payment was not reflecting accurately on her credit report. Continuing, she

stated Monarch sent her mortgage statements from January to November 2011 and that the

Note was endorsed to Bank of America, not Wells Fargo. She also stated Experian has a copy

of the cashier's check for August 2011 and has reported a payment was made for that month.

40.    Upon information and belief Experian did not forward a notice of dispute

following its reception of Ms. Alston's dispute letter dated September 21, 2013. Ms. Alston did

not receive Dispute Results from Experian for her September 2013 dispute.

41.    By letter dated December 13, 2013 Ms. Alston disputed the Wells Fargo account as

being reported with patently inaccurate information. She pointed out that Experian is reporting

the account as Current in August 2011 while reporting the account as 180 days late in

September 2011. She pleaded for Experian to use common sense and cease reporting the

account as going from Current to 180 days late in just 30 days. Next, she advised Experian that

Equifax had changed its reporting of the payment history after receiving a similar dispute from

her. In conclusion she reiterated the Note was endorsed to Bank of America, mortgage

8

statements were being sent by Monarch to her, and that she is making payments to Monarch.

42.     On December 23, 2013 and January 14, 2014 Experian sent Ms. Alston its Dispute results, which purported to update the information in the Wells Fargo account. The payment history was still be reported as Current in Aug 2011 and 180 days past due for Sep and Oct 2011.

43.     On February 26, 2014 Ms. Alston wrote to Experian where she disputed the Wells Fargo mortgage account. The gravamen of the dispute was that the Wells Fargo account is the same mortgage account as a Monarch mortgage account. She enclosed pages from her Equifax report that showed the two accounts had the same terms and were the same mortgage account. Also enclosed was a copy of the cashier's check for $6,492.24, a copy of personal check for $2,434.59 and her 2011 IRS mortgage interest statement. She requested Experian contact Monarch and Wells Fargo to determine if the two mortgage accounts were the same.

44.     After receiving Ms. Alston's February 2014 dispute letter, Experian changed its reporting of August 2011 from Current to No data for this time period. This change was reflected in Experian's dispute results dated March 13, 2014. Experian's change of reporting is an acknowledgment that its prior reporting was inaccurate. Furthermore, Experian's reporting that it has no data for August 2011 is an admission that it cannot verify the payment history for August 2011. Because mortgage payments are made and reported sequentially, each month's payment history is dependent and/or affected by the prior's month status. For instance, if an account was 30 days late the prior month and no payment was made for the present month, then the account is now 60 days late. Whereas, if the account was 120 days late the prior month and no payment is made for the present month, then the account is now 150 days late.

9

45.    Ms. Alston responded by letter dated April 21, 2014 to Experian's Dispute results that changed August 2011 from Current to No data. The letter advised Experian that it has been reporting the payment history for August 2011 as Current since October 2011. In her letter Ms. Alston further advised Experian that the change of reporting was reason for Experian to suspect Wells Fargo as reliable source of information for the reporting of this account. She requested Experian investigate whether a payment was applied to the mortgage account in August 2011.

46.    Upon information and belief Experian did not forward a notice of dispute following its reception of Ms. Alston's dispute letter dated April 21, 2014. Ms. Alston did not receive Dispute Results from Experian for her April 2014 dispute.

47.    On May 8, 2014 Ms. Alston wrote a letter to Experian that enclosed a cashier's check payable, via an endorsement, to Wells Fargo. Ms. Alston pointed out that the endorsement from Monarch to Wells Fargo was proof that Wells Fargo received the payment. She demanded that Experian investigate whether Wells Fargo received the cashier's check.

48.    On May 19, 2014 Experian issued is Dispute results for Ms. Alston's May 2014 dispute. Experian purported to have updated the account but the reporting appeared to be same, including reporting the payment history as No data for August 2011 and 180 days late for September and October 2011. Upon information and belief Experian forwarded an ACDV to Wells Fargo for Wells Fargo to look into Ms. Alston's dispute. Wells Fargo merely confirmed the account was presently being reported consistently with its previous reporting.

49.    By letter dated February 26, 2015 Ms. Alston initiated another dispute with Experian of the Wells Fargo account. The gravamen of her dispute was that "[i]f Experian has no data regarding whether a payment was made or not made, then Experian cannot verify

whether the account was current or delinquent in August 2011." Building on the point Ms. Alston explained that if Experian cannot verify the delinquency status for August 2011, then it could not verify the delinquency for September, October or November 2011. She admonished Experian that the FCRA obligated it to delete the account if the information could not be verified as accurate. Next, she argued that Wells Fargo change of reporting was an indication that it was not a reliable source of reporting and that Experian should conduct a more thorough investigation. The letter concluded with a demand that a statement of dispute be added if Experian did not modify or delete the Wells Fargo account.

50.     Experian issued its dispute results on March 16, 2015 wherein Experian continued to report No data for August 2011 and 180 days late for Sep - Nov 2011. Upon information and belief Experian forwarded an ACDV to Wells Fargo for Wells Fargo to look into Ms. Alston's dispute. Wells Fargo merely confirmed the account was presently being reported consistently with its previous reporting. Experian added Ms. Alston's statement of dispute to the Wells Fargo account.

51.     On April 23, 2015 Ms. Alston requested a description of Experian's investigation of her February 2015 dispute. In her letter she also initiated another dispute of the Wells Fargo account but this time the dispute was specifically related to the payment history for April to July 2011. Ms. Alston explained that she was not delinquent during those months because Wells Fargo was not a holder of the Note. She further noted that Monarch was reporting her as Current for April to July 2011 for the same loan. Concluding, Ms. Alston admonished Experian that the account must be deleted if the information cannot be verified and that Experian cannot verify Wells Fargo was the holder of the Note during the months April to July 2011.

11

52.     Experian neither provided a description of its investigation of Ms. Alston's dispute nor did it provide dispute results of Ms. Alston's April 2015 dispute.

53.     Experian's foregoing reportings of the Wells Fargo delinquent mortgage account are false. Ms. Alston has made her mortgage payments on the subject account and Experian has actual knowledge that Ms. Alston has done so.

54.     Experian has knowledge that:

  a.     The promissory note was endorsed to Bank of America;

  b.     Monarch Bank was sending Mortgage Statements to Plaintiff;

  c.     Ms. Alston was making mortgage payments to Monarch Bank;

  d.     Monarch endorsed Ms. Alston's August 2011 mortgage payment to Wells Fargo.

  e.     Wells Fargo reported to Experian that the mortgage was paid for the month of August 2011.

  f.     Monarch issued a mortgage interest statement that reflected Ms. Alston made twelve mortgage payments to Monarch in 2011.

  g.     Both Monarch and Wells Fargo were reporting mortgage accounts to the Equifax as being opened in November 2010, as having an original balance of $102,212 and as having the same principal and interest mortgage payment amount.

  h.     Monarch is reporting to Equifax that Ms. Alston is current for the same time period that Wells Fargo is reporting Ms. Alston delinquent.

  i.     It cannot verify the account was severely delinquent in August 2011 because it has No Data for this time period.

12

j.    It cannot verify the account was 180 days delinquent in September or October 2011 because it does not know if the account was delinquent or current in August 2011.

55.    Experian had actual knowledge that the Wells Fargo mortgage account was inaccurate and deliberately chose to ignore and permit reporting of the inaccurate account.

56.    Ms. Alston struggled with her credit during the time period related to the dispute in this action. Experian's false reporting hampered and/or precluded Ms. Alston from obtaining credit to purchase real estate and other consumer purchases.

## WELLS FAROG & TRANSUNION

57.    Ms. Alston disputed the Wells Fargo account with Trans Union on September 21, 2013. Her dispute requested that the account be deleted based on the fact that the information being reported was inaccurate. She stated the following reasons in support of her dispute: (i) Wells Fargo was not legally entitled to collect payment and that she was paying Monarch instead, (ii) Monarch forwarded a $6,494 payment to Wells Fargo but the balance did not change and Trans Union continued to report the account as 180+ days delinquent, (iii) Monarch sent mortgage statements from January to November 2011, (iv) the Note was endorsed to Bank of America instead of Wells Fargo and (v) Transunion has knowledge of the $6,492 cashier's check and that account was reported paid for Aug 2011, which is the same month the cashier's check was issued.

58.    Transunion forwarded notice of Ms. Alston's dispute to Wells Fargo who summarily determined, without an investigation, that the account information was being reported accurately. Trans Union issued its Investigation Results, which parroted Wells Fargo's results and sent it to Ms. Alston on October 22, 2013.

13

59.     After receiving the Investigation Results, Ms. Alston sent letter dated October 28, 2013 requesting a description of the investigation. In her request she specifically asked for: (i) the person that Trans Union communicated with at Wells Fargo, (ii) the information that Trans Union conveyed to Wells Fargo, (iii) contact information for the person or department that Trans Union contacted at Wells Fargo and (iv) any other sources Trans Union contacted or relied on to complete the investigation.

60.     On November 5, 2013 Trans Union sent Ms. Alston a form letter describing its general investigation procedure. The letter was not specific to Ms. Alston's dispute and did not provide any of the requested information.

61.     On November 14, 2013 Ms. Alston disputed the Wells Fargo account with Transunion. She pointed out to Transunion that it was reporting the Last Payment Made was in December 2010 while reporting the account paid in August 2011. She further stated that the $6,492.24 payment in August 2011 resulted in the account being Current and therefore reporting the account 120 days late in September and October 2011 was incorrect. Enclosed with the dispute was a mortgage payment coupon, a Transunion credit report and a copy of the August 2011 mortgage payment.

62.     Transunion forwarded notice of Ms. Alston's dispute to Wells Fargo who summarily determined, without an investigation, that the account information was being reported accurately. Transunion accepted Wells Fargo's conclusions despite the patent inaccuracies pointed out in Ms. Alston's dispute. On November 30, 2013 Trans Union sent notice of its Investigation Results to Ms. Alston.

63.     On December 13, 2013 Ms. Alston disputed the Wells Fargo account again with Transunion. She pointed out to Transunion that it was mathematically impossible to go from

14

current in August 2011 to 120 days delinquent in September 2011. She elaborated that Transunion should correct or delete the reporting if Wells Fargo is unable to make sense or explain its rationale for reporting in such an illogical manner. She further stated that Equifax was reporting the payment history similarly but corrected its reporting to show a Current payment history. Enclosed with the dispute were two Equifax credit reports that showed the correction to the payment history.

64.     Transunion forwarded notice of Ms. Alston's dispute to Wells Fargo who summarily instructed Trans Union to report the payment history as Unknown for August 2011. Trans Union blindly repeated Wells Fargo's instructions and sent notice of its Investigation Results to Ms. Alston on January 11, 2014

65.     By letter dated February 26, 2014 Ms. Alston disputed the Wells Fargo account with Trans Union. Her dispute claimed that the Wells Fargo account was the same account as a Monarch Mortgage account that was being reported to Equifax. Enclosed with the dispute letter was an Equifax credit report that showed the two accounts had the same terms and were one in the same. Also enclosed was a copy of the $6,492.24 cashier's check along with a copy of a $2,434.59 personal check and 2011 IRS mortgage interest statement. Ms. Alston requested that Trans Union conduct a manual investigation of her dispute and she provided a $1,000 check payable to Trans Union for the costs of the investigation. She specifically requested that Trans Union (i) contact Monarch and Wells Fargo to determine if the two mortgage accounts were the same, (ii) inquire as to whether Wells Fargo was aware of the $6,492.24 payment Monarch received in August 2011, (iii) ask Wells Fargo and Monarch when the endorsement to Wells Fargo was made on the Note and (iv) ask Wells Fargo if the account should be considered delinquent if Monarch accepted and/or negotiated payment(s).

15

66. Transunion forwarded notice of Ms. Alston's dispute to Wells Fargo who summarily determined, without an investigation, that the information was being reported accurately. Notably, Trans Union was still instructing Trans Union to report August 2011 payment history as Unknown. Despite Wells Fargo's admission that it could not verify the accuracy of August 2011 payment status, Trans Union did not delete the account from Ms. Alston's report. On April 3, 2014 Trans Union sent notice of its Investigation Results to Ms. Alston.

67. On April 14, 2014 Ms. Alston wrote a letter to Trans Union in which she disputed not only the Wells Fargo account but a Monarch account that was now appearing on her report. In her dispute she stated the following:

> Clearly the Wells Fargo and Monarch accounts are one in the same. Both accounts have the 1) Date Opened as 11/12/2010; 2) Loan Type as FHA Real Estate Mortgage; and 3) High Balance as $102,212. In previous disputes, including the immediately preceding dispute, I have provided documentation that Monarch Bank has been paid. Specifically, I provided proof of a $6,492.24 payment in August 2011 and a $2,434.59 payment in November 2011. Therefore, TransUnion knows the account was not 120 days delinquent as of November 15, 2011. Simply parroting patently inaccurate reporting from Wells Fargo is frowned upon by the courts. Next, TransUnion is reporting the Monarch Bank payment history as unknown for March 2014 and February 2014. This does not reconcile with TransUnion's reporting of Last Payment Made on February 28, 2014. Please update my payment history to show OK rating for February and March 2014.

68. On May 12, 2014 Ms. Alston submitted another dispute where she addressed Trans Union's reporting of the months August 2011, September 2011 and October 2011. She pointed out that Trans Union had been reporting August 2011 as Current for over two years but now reporting the payment history as Unknown for August 2011. Enclosed with her dispute was a copy of the $6,492.24 cashier's check **that showed that the payment was endorsed by Monarch to Wells Fargo**. Also enclosed was an email from Wells Fargo that stated Wells

16

Fargo was in possession of the cashier's check. The letter concluded by stating the endorsement on the cashier's check and the email indicating Wells Fargo was in possession, demonstrated that the account was current as of August 2011 and therefore could not be 120 days late in September 2011 or October 2011.

69.     Trans Union either did not forward notice of Ms. Alston's April and May 2014 disputes to Wells Fargo or did not send its investigation results to Ms. Alston. Either way Trans Union continued reporting the payment history as Unknown for August 2011 and 120 days late in September and October 2011.

70.     On February 25, 2015 Ms. Alston disputed the Wells Fargo account with Trans Union. She advised Trans Union that by reporting August 2011 payment as unknown, it is asserting that it does not know whether a payment was made or not. Expounding on that point she stated that it therefore cannot verify whether the account was current or delinquent in August 2011. She further elaborated that "if Trans Union cannot verify whether the account was delinquent in August 2011, then Trans Union cannot verify whether the account was 180 days delinquent in September, October or November 2011." She then admonished Trans Union that the FCRA obligates Trans Union to "delete the tradeline if it cannot verify the information being reported is accurate." Next, she pointed out that Wells Fargo has shown that it is not a reliable source by its recent change in its reporting of the payment history for August 2011. In conclusion, she requested that:

> If Trans Union continues to report this account, then I demand the following statement be included: **TransUnion and Wells Fargo reported this account as Current for Aug 2011 for nearly three years. Trans Union and Wells Fargo has never reported the account as late for Aug 2011. Trans Union and Wells Fargo currently is reporting that they do not know if a payment was made in Aug 2011. Trans Union and Wells Fargo have knowledge of a $6,492.24 cashier check that was dated for August 2, 2011.**

71.     Trans Union issued its Investigation Results on March 12, 2015 wherein it continued reporting the payment history for the Wells Fargo account as Unknown in August 2011. Upon information and belief Trans Union forwarded notice of Ms. Alston's dispute to Wells Fargo and relied solely on Wells Fargo's instructions on the manner in which to report the account. Wells Fargo did not investigate Ms. Alston's dispute but merely confirmed the account was being reported consistently with prior reportings. Despite Ms. Alston's request to have her statement of dispute added to the account, Trans Union did not add the statement.

72.     On April 23, 2015 Ms. Alston requested a description of Trans Union's investigation of her February 2015 dispute. Additionally, she requested an investigation of the payment history on the Wells Fargo account for the months of April to July 2011. She asserted that Wells Fargo did not qualify as a holder of the Note during that time period. She explained that the Note was payable to Monarch and that an endorsement to Wells Fargo was required for Wells Fargo to become an endorsement. She then explained that Monarch never endorsed the Note to Wells Fargo but instead endorsed it to Bank of America and that Wells Fargo itself fraudulently endorsed it to itself. Enclosed with the dispute was Interrogatories Responses from Wells Fargo and Deposition excerpts from Monarch's executive William T. Morison. Next, she pointed out that Monarch reports her current for the months April to July 2011 and that Monarch had more standing than Wells Fargo to collect payments during April to July 2011. She concluded by stating that "[i]f Trans Union is unable to verify that Wells Fargo was the holder in Apr 200 to July 2011 then Wells Fargo cannot verify that I was delinquent to Wells Fargo under the terms of the Note."

73.     On May 7, 2015 Trans Union purported to respond to Ms. Alston's April 23, 2015 letter. Although Ms. Alston's April 2015 letter served as both a request for description of

18

Trans Union's investigation and a dispute of the payment history for April to July 2011, Trans Union's response only addressed its investigation procedure. Upon information and belief Trans Union did not forward notice of Ms. Alston's dispute to Wells Fargo and did not perform an investigation of her April 2015 dispute.

74.    Trans Union's foregoing reportings of the Wells Fargo delinquent mortgage account are false. Ms. Alston has made her mortgage payments on the subject account and Experian has actual knowledge that Ms. Alston has done so.

75.    Trans Union has knowledge that:

    a.    The promissory note was endorsed to Bank of America;

    b.    Monarch Bank was sending Mortgage Statements to Plaintiff;

    c.    Ms. Alston was making mortgage payments to Monarch Bank;

    d.    Monarch endorsed Ms. Alston's August 2011 mortgage payment to Wells Fargo.

    e.    Wells Fargo reported to Trans Union that the mortgage was paid for the month of August 2011.

    f.    Monarch issued a mortgage interest statement that reflected Ms. Alston made twelve mortgage payments to Monarch in 2011.

    g.    Both Monarch and Wells Fargo were reporting mortgage accounts to the Trans Union and Equifax as being opened in November 2010, as having an original balance of $102,212 and as having the same principal and interest mortgage payment amount.

    h.    Monarch is reporting to Equifax that Ms. Alston is current for the same time period that Wells Fargo is reporting Ms. Alston delinquent.

    i.      It cannot verify the account was severely delinquent in August 2011 because it has No Data for this time period.

    j.      It cannot verify the account was 180 days delinquent in September or October 2011 because it does not know if the account was delinquent or current in August 2011.

76.      Trans Union had actual knowledge that the Wells Fargo mortgage account was inaccurate and deliberately chose to ignore and permit reporting of the inaccurate account.

77.      Ms. Alston struggled with her credit during the time period related to the dispute in this action. Trans Union's false reporting hampered and/or precluded Ms. Alston from obtaining credit to purchase real estate and other consumer purchases.

<u>COUNT TWO: VIOLATION OF FCRA, 15 U.S.C. 1681e(a)</u>
**(as to Defendant Wells Fargo)**

78.      Plaintiff incorporates paragraphs 1 - 77 by reference.

79.      Wells Fargo reported false and inaccurate information to the Defendant CRAs.

80.      Plaintiff disputed the information being reported by Wells Fargo to the CRAs.

81.      The CRAs forwarded notice of the Plaintiff's dispute to Wells Fargo.

82.      Wells Fargo did not perform a careful inquiry of Plaintiff's dispute. Instead Wells Fargo just summarily concluded the information was accurate without assessing the merits of Plaintiff's claims in her disputes.

83.      A reasonable investigation of Plaintiff's dispute would have involved Wells Fargo inquiring as to:

    (i)      who endorsed the Note to Wells Fargo and when the Note was endorsed;

    (ii)      why Monarch was sending mortgage statements to Plaintiff;

    (iii)      why Monarch was reporting Plaintiff current from February to November 2011;

(iv)    how Plaintiff could be Current in Aug 2011 and 180 days late in Sep 2011; and

(v)     Plaintiff's obligation to pay Wells Fargo if the Note was payable to Bank of
America.

84.     A reasonable investigation would have resulted in Wells Fargo discovering that
Plaintiff paid her mortgage payments in accordance with the law. Under the law Wells Fargo
was not entitled to receive payment because it did not qualify as holder of the Note. Wells
Fargo did not qualify as a holder of the Note because the Note was endorsed to Bank of
America. Any subsequent alterations and/or endorsements were not made or authorized by the
holder. Wells Fargo knows Bank of America did not endorse the Note to Wells Fargo and that
the Bank of America endorsement was not cancelled by Bank of America or Monarch. Wells
Fargo knows it was not entitled to enforce the Note.

85.     A reasonable investigation would have resulted in Wells Fargo discovering that
Plaintiff could not have been 180 days delinquent in September 2011. Wells Fargo has never
reported or otherwise asserted that Plaintiff was delinquent in August 2011. For well over two
years Wells Fargo instructed the CRA to report Plaintiff as Current with no past due balance as
of August 2011. Wells Fargo's reporting that the account was Current in August 2011 with no
past due balance but 180 days late in September 2011 with a $6,492.24 balance or more is
patently inaccurate.

86.     A reasonable investigation would have resulted in Wells Fargo discovering that
it needed to modify or delete the tradeline. Wells Fargo began instructing Experian and Trans
Union to report the account's payment history as unknown or having no data for August 2011's
payment. Such a reporting is an acknowledgement that Wells Fargo does not know what was
paid or not paid in August 2011. In other words Wells Fargo could not verify Plaintiff was

21

delinquent or did not make a payment in August 2011.

87.     A reasonable investigation would have resulted in Wells Fargo discovering that it must instruct Equifax to modify or delete the tradeline. Wells Fargo was instructing Equifax to report the payment history as Current from February to November 2011 while reporting the status of the account as 120 days late. It is impossible for Plaintiff to be Current on its monthly mortgage payments from February to November 2011 and to be 120 days late as of November 2011.

88.     Upon information and belief, the CRAs prepared and published to third parties multiple inaccurate reports about Plaintiff which contained inaccurate derogatory information regarding the subject account.

89.     Upon information and belief, the CRAs each forwarded Plaintiff's disputes to Wells Fargo on one or more occasions. Upon information and belief, Wells Fargo was provided notice of Plaintiff's disputes and despite such notice, it failed and refused to conduct a reasonable investigation and correct its inaccurate reports.

90.     Wells Fargo violated 15 U.S.C. § 1681s-2(b)(1)(A) on several occasions within the past two years, by example only and without limitation, by failing to fully and properly investigate Plaintiff's disputes.

91.     Wells Fargo violated 15 U.S.C. § 1681s-2(b)(1)(B) on several occasions within the past two years, by example only and without limitation, by failing to review all relevant information provided by the consumer reporting agencies.

92.     Wells Fargo violated 15 U.S.C. § 1681s-2(b)(1)(C)-(E) on one or more occasions within the past two years, by example only and without limitation, by failing to

notate the account was disputed; failing to modify, delete, or block the reporting of the account; and failing to correctly report results of an accurate investigation to each CRA.

93.     As a result Wells Fargo's foregoing violations of 15 U.S.C. § 1681s-2(b), Plaintiff's suffered actual damages, including but not limited to: out-of-pocket costs, loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

94.     The violations of Wells Fargo were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Wells Fargo was negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

95.     The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Wells Fargo in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT TWO: VIOLATION OF FCRA, 15 U.S.C. 1681e(a)
### (as to Wells Fargo and Equifax)

96.     Plaintiff incorporates paragraphs 1 - 77 by reference.

97.     Equifax willfully violated 15 U.S.C. §1681e(a) by failing to establish and/or follow reasonable procedures to avoid the disclosure of credit information for impermissible purposes.

98.     Wells Fargo knowingly and willfully used deception and false pretenses to obtain Plaintiff's consumer report, by falsely representing or certifying that the report was being obtained for a permissible purpose.

99.     Defendants' conduct in obtaining or releasing Plaintiff's credit report under false pretenses violates 15 U.S.C. §1681q.

100.     As a result of Defendants' foregoing violations, Plaintiff suffered actual damages, including but not limited to: pecuniary expenses and costs, emotional and mental distress deriving from her anger and frustration, and other stress relating to Defendants invasion of Plaintiff's privacy.

101.     Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT THREE: VIOLATION OF FCRA, 15 U.S.C. 1681e(b)
### (as to Equifax, Experian and Trans Union)

102.     Plaintiff incorporates paragraphs 1 - 77 by reference.

103.     Defendants violated 15 U.S.C. §1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the Plaintiff's credit reports and credit files it published and maintained concerning the Plaintiff.

104.     As a result of Defendants' foregoing violations, Plaintiff suffered actual damages, including but not limited to: pecuniary expense, loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

105.     Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT FOUR: VIOLATION OF FCRA, 15 U.S.C. 1681i(a)
### (as to Equifax, Experian and Trans Union)

106.     Plaintiff incorporates paragraphs 1 - 77 by reference.

107.     Defendants violated 15 U.S.C. §1681i(a)(1) on multiple occasions by failing to conduct a reasonable investigation to determine whether the disputed information is inaccurate

and record the current status of the disputed information or delete the item from the Plaintiff's credit files.

108.    Defendants violated 15 U.S.C. §1681i(a)(2) on multiple occasions by failing to provide Wells Fargo with all the relevant information regarding the Plaintiff's dispute.

109.    Defendants violated 15 U.S.C. §1681i(a)(4) on multiple occasions by failing to review and consider all relevant information submitted by the Plaintiff.

110.    Defendants violated 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

111.    Defendants violated 15 U.S.C. §1681i(a)(7) by failing to provide a description of the reinvestigation within 15 days of receiving Plaintiff's requests for such descriptions.

112.    As a result of Defendants' foregoing violations, Plaintiff suffered actual damages, including but not limited to: pecuniary costs and expenses, loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

113.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys' fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT FIVE: CLASS ACTION CLAIM
### VIOLATION OF FCRA, 15 U.S.C. 1681i(b)
### (as to Equifax and Trans Union)

114.    Plaintiff incorporates paragraphs 1 - 77 by reference.

115.    Defendants violated 15 U.S.C. §1681i(b)&(c) by failing to provide Plaintiff's statement of dispute in their credit reports that were issued after Defendants received Plaintiff's request to add a statement of dispute.

116.   15 U.S.C. §1681i(b) provides that

**Statement of dispute**

**If the reinvestigation does not resolve the dispute, the consumer may file a brief statement setting forth the nature of the dispute. The consumer reporting agency may limit such statements to not more than one hundred words if it provides the consumer with assistance in writing a clear summary of the dispute.**

117.   15 U.S.C. §1681i(c) provides that

**Notification of consumer dispute in subsequent consumer reports**

**Whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof.**

118.   Pursuant to 15 U.S.C. §1681n, Defendant is liable for statutory and punitive damages, as well as attorney fees and costs, in an amount to be determined by the Court for violating 15 U.S.C. §1681i(b),(c).

## Class Allegations

119.   Plaintiff bring this action for herself and on behalf of the class, pursuant to Maryland Rule 2-231(a)&(b)(3).

120.   The class consists of (a) all individuals (b) that sought to include a statement to their account (c) after receiving a reinvestigation of a disputed tradeline from Defendants, and (d) was the subject of a subsequent consumer report containing the disputed tradeline that did not provide either the consumer's statement or a clear and accurate summary thereof.

121.   The members of the class are so numerous that joinder of all is not practicable.

122.   On information and belief, there are at least 40 individuals within the defined class.

123.    There are questions of law and fact common to the class members, which predominate over any questions relating to individual class members. The predominant common questions are:

      a.    Whether Defendants received a dispute of a tradeline;

      b.    Whether Defendants reinvestigated the disputed tradeline;

      c.    Whether Defendants received a request to add a statement to the tradeline after Defendants reinvestigated a disputed tradeline;

      d.    Whether Defendants provided a subsequent consumer report that failed to provide the consumer's statement or an accurate summary thereof;

      e.    Whether Defendants knowingly and intentionally committed an act in conscious disregard of the rights of the consumer;

      f.    Whether Defendants did so recklessly; and

      g.    Whether Equifax's conduct violated the FCRA.

124.    Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

125.    Plaintiff will fairly and adequately represent the class members. Plaintiff will retain competent and experienced counsel.

126.    A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.    Individual actions are not economically feasible;

      b.    Members of the class are likely to be unaware of their rights; and

      c.    Congress intended class actions to be the principal enforcement mechanism under the FCRA.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment in his favor for the following:

(a)     Certification of the putative Class;

(b)     Judgment for statutory damages against Defendants Experian and Trans Union

on the class claim in an amount between $100 and $1,000 per violation per

Class member, pursuant to 15 U.S.C. 1681n(a)(1)(A);

(c)     Judgment for punitive damages against Defendants Experian and Trans Union

on the class claim pursuant to 15 U.S.C. 1681n(a)(2);

(d)     Approval of a $15,000 to $25,000 incentive award for Plaintiff;

(e)     Award costs and reasonable attorney's fees pursuant to 15 U.S.C. 1681n(a)(3);

(f)     Judgment for actual, statutory and punitive damages against Defendants on

Plaintiff's  individual claims; and

(g)     Any such other relief the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,

CANDACE ALSTON

Candace Alston
10012 Cedarhollow Ln
Largo, MD 20774
(301) 350-5780
*Pro Se Plaintiff*