UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| CANDACE ALSTON, *on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br>EXPERIAN INFORMATION SOLUTIONS, INC,<br>TRANSUNION, LLC, and<br>WELLS FARGO BANK, NAT'L ASSOC.,<br><br>Defendants. | Civil Action No. TDC-15-3343 |

## MEMORANDUM OPINION

Plaintiff Candace Alston has filed a class action complaint alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§1681-1681x (2012). Pending before the Court are Motions to Dismiss filed by each of the four Defendants, Equifax Information Services, Inc. ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Trans Union, LLC ("Trans Union"), and Wells Fargo Bank, Nat'l Assoc. ("Wells Fargo"). Having reviewed the complaint and the briefs, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motions to Dismiss are GRANTED.

### BACKGROUND

On November 12, 2010, Alston obtained a mortgage from Monarch Bank ("Monarch") to purchase property located at 7929 Mandan Road in Greenbelt, Maryland. Although Wells Fargo informed her that it had acquired the servicing and ownership of the loan, the promissory note

was endorsed to Bank of America. Skeptical of Wells Fargo's claims, Alston sent her mortgage payments to Monarch, but Monarch did not process her payments, with one exception. In August 2011, Alston sent Monarch a cashier's check for $6,492.24, representing her outstanding mortgage balance. Monarch endorsed the check and forwarded it to Wells Fargo.

During this period, Wells Fargo reported Alston's mortgage account as delinquent, with the exception of August 2011, which it reported as "paid." Am. Compl. ¶ 16, ECF No. 26. The following month, September 2011, Wells Fargo reported the account as 180 days delinquent. Wells Fargo continued to report the account in this manner through the beginning of 2014.

Beginning in January 2011, Alston began to dispute Wells Fargo's right to service her loan. In July 2011, she began to dispute Wells Fargo's reporting of her mortgage as past due. These disputes formed the basis of *Alston v. Wells Fargo*, No. TDC-13-3147, in which, as relevant here, Alston sued Wells Fargo for an FCRA violation of 15 U.S.C. § 1681s-2. On February 26, 2016, this Court granted summary judgment to Wells Fargo on that claim. Alston bases her present claims against Wells Fargo on the same facts that served as the basis for that prior lawsuit.

Also during this period, Equifax, Experian, and Trans Union relied on and repeated Wells Fargo's reporting on Alston's mortgage account. Beginning in 2011, Alston filed a series of disputes with each of these consumer reporting agencies ("CRAs"), and she continued to dispute their reporting of the Wells Fargo mortgage account into 2015. Alston's 2011 and 2012 disputes with Equifax about the Wells Fargo mortgage formed part of the basis for *Alston v. Equifax*, No. TDC-13-1230, in which, as relevant here, Alston sued Equifax for FCRA violations of various subsections of 15 U.S.C. § 1681e and § 1681i. On September 21, 2016, this Court granted summary judgment to Equifax on those claims.

Alston's 2011 to 2013 disputes with Trans Union and Experian about the Wells Fargo mortgage are the basis for another pending case in this Court, *Alston v. Trans Union and Experian*, No. TDC-14-1180, in which Alston alleges violations of various subsections of § 1681e and § 1681i. That case has been in discovery since May 13, 2014. Alston also used her 2011 to 2013 disputes with Experian, as well as an April 2014 dispute, as the basis for *Alston, et al. v. Experian*, No. TDC-14-3957, in which Alston asserted additional claims under the FCRA and also sought to proceed with her claims as a class action. On March 3, 2016, this Court dismissed Alston's claims in that case as barred by the doctrine of claim splitting. Alston bases her present lawsuit on the CRAs' continued reporting in 2014 and 2015 of the Wells Fargo mortgage account as delinquent and their responses to her continued disputes of that reporting.

On September 14, 2015, Alston filed this suit *pro se* against Wells Fargo, Equifax, Experian, and Trans Union in the Circuit Court of Maryland for Prince George's County, alleging violations of various subsections of the FCRA. Defendants removed the action to this Court on November 2, 2015. On November 24, 2015, in response to Motions to Dismiss filed by Defendants, Alston amended her Complaint, this time through counsel. Alston styles her Amended Complaint as a class action and alleges five causes of action: (1) a violation of 15 U.S.C. § 1681s-2(b) by Wells Fargo; (2) a violation of 15 U.S.C. § 1681e(a) by Wells Fargo and Equifax; (3) a violation of 15 U.S.C. § 1681e(b) by Equifax, Experian, and Trans Union; (4) a violation of 15 U.S.C. § 1681i(a) by Equifax, Experian, and Trans Union; and (5) a class action claim for a violation of 15 U.S.C. § 1681i(b) by Equifax and Trans Union. Each Defendant has filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Alston has filed responsive briefing to each Motion. As part of her Response to Trans Union's Motion to

Dismiss, Alston filed a Motion for Partial Summary Judgment as to her claims against Trans Union.

## DISCUSSION

### I. Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

### II. Wells Fargo and Equifax

Wells Fargo urges dismissal of Alston's present claims based on the doctrine of claim splitting, arguing that the claims she raises in this case all could have been asserted in *Alston v. Wells Fargo*, No. TDC-13-3147. Equifax urges dismissal of Alston's individual and class claims on the theory that she cannot collaterally attack the validity of the Wells Fargo mortgage through an FCRA claim and further seeks dismissal of the class claim based on Alston's failure to satisfy various requirements of Federal Rule of Civil Procedure 23. Although Equifax does not expressly argue that Alston's present claims are duplicative of her prior litigation, it does assert that "the only difference between [Alston's] First Case and this case is that [Alston] added class allegations and allegations regarding additional disputes on the same Account that she allegedly

submitted to Equifax from September 2013 to February 2015 (after filing the original action)." Equifax Mot. Dismiss at 2, ECF No. 43.

Since the filing of Wells Fargo's and Equifax's Motions to Dismiss in this case, this Court has granted summary judgment to Wells Fargo in *Alston v. Wells Fargo*, No. TDC-13-3147 and to Equifax in *Alston v. Equifax* No. TDC-13-1230. In *Alston v. Wells Fargo*, the Court determined that Wells Fargo validly held Alston's mortgage loan. In both cases, the Court determined that during the period that Wells Fargo serviced Alston's mortgage, Alston made no payments to Wells Fargo, and her payments to Monarch were invalid as a matter of law because each was conditioned on acceptance of her secretly executed and unilateral Rider to the Deed of Trust, a Rider that would have allowed Alston to discharge her mortgage in its entirety. *See* Alston Rider, Prince George's County Land Records, Book 32280 at 502.[1] This Court thus found that Wells Fargo accurately reported Alston's mortgage as delinquent, and that Equifax, in adopting Wells Fargo's information, also accurately reported Alston's mortgage account. Based on these findings, the Court granted summary judgment to Wells Fargo on Alston's FCRA claims under § 1681s-2 and to Equifax on Alston's FCRA claims under § 1681e and § 1681i, because a plaintiff cannot prevail on an FCRA claim under those subsections without showing an inaccuracy in the credit reporting. *See Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (holding that to succeed on an FCRA claim under § 1681e, a plaintiff must show both that "(1) the consumer report contained inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy"); *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 38 (1st Cir. 2010) (holding that a plaintiff must show "actual inaccuracy" to establish a claim against a furnisher of credit information under 15 U.S.C.

---

[1] The Court takes judicial notice of land records pursuant to Federal Rule of Evidence 201(b)(2).

§ 1681s-2(b)); *Carvalho v. Equifax*, 629 F.3d 876, 890 (9th Cir. 2010) (holding that to succeed on an FCRA claim under § 1681i, a plaintiff must show that the disputed information was inaccurate, since the overall purpose of the FCRA is "to protect consumers from the transmission of inaccurate information about them"); *DeAndrade v. Trans Union*, 523 F.3d 61, 66-68 (1st Cir. 2008) (holding that a showing of inaccuracy is required for a claim under § 1681i); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991) (same).

Although neither Wells Fargo nor Equifax explicitly asserted collateral estoppel, also known as issue preclusion, as a basis for dismissal, Wells Fargo stated in its brief that "if the Court grants Wells Fargo's pending Motion for Summary Judgment in Case No. 13-CV-03147-TDC, that would provide an additional basis for the dismissal of the current Complaint." Wells Fargo Mot. Dismiss at 2, ECF No. 33. The Court construes this assertion to be an argument for dismissal on the basis of *res judicata* or collateral estoppel. Regardless, courts may raise the issue of collateral estoppel *sua sponte*. *Arizona v. California*, 530 U.S. 390, 412 (2000) ("[I]f a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised.") (internal quotation marks and citation omitted). The Court may do so because *res judicata*, of which collateral estoppel is a sub-species, implicates the Court's interest in "the avoidance of unnecessary judicial waste." *Id.* That interest is paramount here. This is Alston's fifth case to come before this Court based on the same mortgage transaction, a number that does not include other cases heard in this District based on this same core of operative facts. Since the filing of this case, Alston has filed at least two other cases chronicling the fallout of that same transaction. *See Alston v. Equifax*, No. TDC 15-3394 and *Alston v. Monarch*, No. TDC 16-0608. Such a pattern of litigation relating to the same factual episode borders on the vexatious and strains the Court's limited resources at the

expense of other litigants. It is therefore appropriate to consider whether collateral estoppel bars these claims.

Based on this Court's prior rulings in *Alston v. Wells Fargo*, No. TDC-13-3147 and *Alston v. Equifax* No. TDC-13-1230, Alston is collaterally estopped from raising her present claims against Wells Fargo and Equifax. Collateral estoppel applies when a party raises in a successive lawsuit "an issue of fact or law actually litigated and resolved in a valid court determination essential to [a] prior judgment" and that party had "a full and fair opportunity to litigate," even if the issue "recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). For the doctrine to apply, (1) the issue to be precluded must be identical to one previously litigated, (2) the issue must have been actually determined in the prior proceeding, (3) the determination of the issue must have been a critical and necessary part of the earlier decision, (4) the prior judgment must be final and valid, and (5) the party against whom estoppel is to be applied must have had a "full and fair opportunity to litigate the issue" in the prior case. *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998).

These requirements are met here. All of Alston's current claims against Wells Fargo and Equifax stem from Wells Fargo's and Equifax's reporting of the same mortgage account at issue in those previous cases, and all of her claims are again made pursuant to § 1681s-2, § 1681e, and § 1681i, each of which has a threshold inaccuracy requirement. To succeed on those claims, Alston would have to prevail on the question whether the Wells Fargo mortgage account was accurately reported as delinquent. That specific question was central to, and specifically resolved in, these two prior cases. *See Alston v. Wells Fargo*, No. TDC-13-3147, 2016 WL 816733 at *8-10 (D. Md. Feb. 26, 2016); Mem. Op. at 14-19, *Alston v. Equifax*, No. TDC-13-1230 (D. Md. Sept. 20, 2016), ECF No. 123. Because those cases were decided on summary

judgment after discovery, Alston has already had a full and fair opportunity to litigate. Having had that opportunity, she is bound by those results. *See Taylor*, 553 U.S. at 892; Restatement (Second) of Judgments § 27 (2016) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim"); *id.* § 29 ("A party precluded from relitigating an issue with an opposing party, in accordance with [§ 27,] is also precluded from doing so with another person[.]"). Because this Court has already found, as a matter of law, that the delinquent Wells Fargo mortgage account was accurate, and because Alston's current claims against Wells Fargo and Equifax can succeed only if Alston can demonstrate an inaccuracy, the Court finds that those claims necessarily fail because Alston is barred by collateral estoppel from relitigating the issue of inaccuracy against Wells Fargo and Equifax. The Motions to Dismiss filed by Wells Fargo and Equifax are granted.

## III.    Experian and Trans Union

### A.    Claim Splitting

This case is Alston's third action in this Court alleging FCRA violations by Experian or Trans Union arising from those CRAs' credit reports and reinvestigations relating to the Wells Fargo mortgages. Alston has filed *Alston v. Transunion, et al.*, No. TDC-14-1180 ("*Alston I*"), *Alston, et al. v. Experian*, No. TDC-14-3957 ("*Alston II*"), and the present case ("*Alston III*"). Experian and Trans Union argue that the claims that Alston raises in *Alston III* should have been raised in *Alston I*, currently pending before this Court, such that Alston's claims here are barred by the doctrine of claim splitting.

"It is undisputed that it is within a district court's power to stay or dismiss a suit that is duplicative of another federal court suit." *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*,

452 F. Supp. 2d 621, 626 (D. Md. 2006) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). Such duplicative litigation is known as "claim splitting," an aspect of *res judicata*. *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 F. App'x 256, 264 (4th Cir. 2008). "The rule against claim splitting prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action." *Id.* at 265 (internal quotation marks omitted). It is a doctrine designed to "foster judicial economy" and protect the parties from "the vexation of concurrent litigation over the same subject matter." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000). A plaintiff therefore cannot bring an action in the same federal court, against the same defendant, and on the same subject, while the first action remains pending. *Sensormatic Sec. Corp.*, 273 F. App'x at 265 (citing *Curtis*, 226 F.3d at 138–39). For the rule against claim splitting to apply, the claims alleged in the second suit need not be identical to those alleged in the first suit. Rather, the suits and claims need only involve the same parties and "arise out of the same transaction or series of transactions as the first claim." *Id.*; *see also Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir. 2004) (finding that *res judicata* applies if the second suit "arises out of the same transaction or series of transactions or the same core of operative facts") (quoting *In re Varat Enters., Inc.*, 831 F.3d 1310, 1316 (4th Cir.1996)).

This Court has already found that claims Alston asserted in *Alston II* were barred by the doctrine of claim splitting because they arose from the same core of operative facts at issue in *Alston I*. *Alston II*, 2016 WL 901249 at *3-5. The analysis the Court employed in that case is entirely applicable to the facts here. *See id.* In *Alston I*, Alston's claims against Experian and Trans Union for alleged FCRA violations are based on their reporting of her Wells Fargo mortgage account and their handlings of disputes she filed with one or both of the CRAs on July

17, 2011; August 22, 2011; September 22, 2011; November 21, 2011; June 12, 2012; September 21, 2013; November 14, 2013; and December 13, 2013.[2] Here, Alston bases her claims against Experian on disputes or communications relating to the Wells Fargo mortgage which she submitted on December 13, 2013, February 24, 2014, April 21, 2014, May 8, 2014, February 26, 2015, April 23, 2015, and October 19, 2015. She bases her claims against Trans Union on Wells Fargo-related disputes or communications dated October 28, 2013, November 14, 2013, December 13, 2013, February 26, 2014, April 14, 2014, May 12, 2014, February 25, 2015, April 23, 2015, and May 7, 2015.

As to the legal theories at issue, in *Alston I*, Alston asserts that Experian and Trans Union failed to follow reasonable procedures in maintaining her credit information, in violation of 15 U.S.C. § 1681e(b), and that they failed to conduct reasonable reinvestigations into her disputes and make corrections to inaccuracies, in violation of 15 U.S.C. § 1681i(a). In *Alston III*, Alston again alleges claims under § 1681e(b) and § 1681i(a) based on her additional disputes from 2013 to 2015. She also alleges a class action claim against Trans Union for violation of 15 U.S.C. § 1681i(b) based on its alleged refusal to allow her to include an explanatory statement in her credit report describing the basis for her dispute of the Wells Fargo account.

Although Alston references at least one new subsection of the FCRA in *Alston III*, her overarching theory of the case remains the same: Experian and Trans Union reported inaccurate information about her Wells Fargo account, failed adequately to reinvestigate the accuracy of that reporting, and failed to alter or delete that information to her satisfaction when she challenged that reporting. With the factual predicates for *Alston I* and *Alston III* virtually

---

[2] Alston's Complaint in *Alston I* references only the disputes up to June 2012, but her Motion for Partial Summary Judgment asserts that she submitted additional disputes to Experian and Trans Union on September 21, 2013 and December 13, 2013 and to Trans Union only on November 14, 2013. *Alston I*, Mem. Supp. Mot. Partial Summ. J. at 2, ECF No. 23-1.

indistinguishable and the theory of liability in the two cases largely unchanged, the Court concludes that *Alston III* arises out of the same series of transactions and core of operative facts as *Alston I*. *Alston III* is barred by the doctrine of claim splitting. *See Sensormatic Sec. Corp.*, 273 F. App'x at 265.

Alston asserts, however, that she could not have raised her current claims in *Alston I* because she filed her Complaint in that case on July 16, 2013, before she lodged the disputes about which she complains in *Alston III*. This argument is unpersuasive. Although Alston could not have included in her original *Alston I* Complaint the claims she bases on her post-July 2013 disputes, she could have amended her Complaint to include them. Alston did not serve her original *Alston I* Complaint on Trans Union and Experian until March 27, 2014, and the case was not removed to this Court until April 10, 2014. The *Alston I* Scheduling Order then gave Alston until July 7, 2014 to amend her complaint and an original discovery deadline of October 27, 2014. Although she had lodged over half of the disputes on which she relies for her claims in *Alston III* by the time of the deadline to amend in *Alston I*, Alston made no effort to include those ripe claims in that suit. Furthermore, on four occasions after that July 7, 2014 amendment deadline in *Alston I*, beginning on October 27, 2014, Alston alone, or the parties jointly, requested to modify the scheduling order to extend the discovery deadline. The Court granted those requests, resulting in a revised discovery deadline of March 31, 2016. Even that proved to be a malleable deadline. Discovery in *Alston I* has been so protracted that Alston was given until September 6, 2016 to file a Motion to Compel. In none of these requests to modify the scheduling order, which includes as a standard item a deadline for amendments to the complaint, did Alston seek to extend that amendment deadline. In light of this Court's demonstrated willingness to extend discovery, Alston's implicit assertion that she could not have brought her

current claims in *Alston I* because July 7, 2014 was a hard and fast deadline rings hollow. This is particularly true considering that Federal Rule of Civil Procedure 15 advises courts to "freely give leave" to amend. Fed. R. Civ. P. 15(a)(2).

Rather than amend the Complaint in *Alston I*, Alston remained steadfastly silent on the multitude of additional allegations she now makes in *Alston III*, and she did so while discovery on those claims could have been folded into the discovery and overall litigation already underway as part of *Alston I*. *Alston III* is thus precisely the kind of waste of judicial resources and vexatious litigation that the doctrine of claim splitting is designed to prevent. *See Sensormatic*, 452 F. Supp. 2d at 628 (stating that allowing a plaintiff to pursue litigation through "piecemeal claims" would "put the parties to the cost and vexation of multiple lawsuits, deplete judicial resources, foster inconsistent decision, and diminish reliance on judicial decisions"). This is particularly true when one considers that the core of these allegations is a mortgage transaction that occurred over five years ago, but which Alston appears to believe can be a perpetual source of litigation. Because Alston had an opportunity to litigate these claims in *Alston I*, the doctrine of claim splitting is applicable.

Lastly, Alston asserts that her claims against Trans Union should not be barred by the doctrine of claim splitting because class actions are a well-known exception to that rule. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 432 (4th Cir. 2003) (noting that class actions are "one of the recognized exceptions to the rule against claim-splitting") (internal quotation marks and citation omitted). In *Alston II*, the Court considered and rejected this precise argument because Alston is not, as required for the exception to apply, a former class member seeking to pursue claims not included in an earlier class action. *See Alston II*, No. TDC-14-3957, WL 2016 WL 901249 at *5 (citing *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867,

880 (1984)). Accordingly, the Court rejects this argument and concludes that Alston's claims are barred by the doctrine of claim splitting.

The Court denies Alston's request to have the claims consolidated into *Alston I*, rather than dismissed, because *Alston I* is so far along, having effectively completed lengthy discovery, that consolidation would create significant inefficiencies and delay in reaching resolution of that case. Consolidation is also not warranted because, as discussed below, Alston's claims are subject to dismissal, whether now or after any consolidation, on an alternative basis.

### B. Collateral Estoppel

The Court also concludes that Alston's claims against Experian and Trans Union must be dismissed under the doctrine of collateral estoppel. As discussed above in relation to the claims against Wells Fargo and Equifax, and for the same reasons, the Court concludes that it is appropriate to consider the issue of collateral estoppel *sua sponte*. *See supra* part II. As with the claims against Wells Fargo and Equifax, the claims against Experian and Trans Union, brought under 15 U.S.C. §§1681e and 1681i, cannot succeed unless Alston can show that the credit reports were inaccurate. The Court has already found, in *Alston v. Wells Fargo*, No. TDC-13-3147, that Wells Fargo's reporting of its mortgage to the CRAs was accurate, such that Alston cannot show that the CRAs' reporting of a delinquency was inaccurate. As discussed above, *see supra* part II, Alston had "a full opportunity to litigate" this "issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *Taylor*, 553 U.S. at 892. Accordingly, beyond the doctrine of claim splitting, Alston's claims must also be dismissed because the doctrine of collateral estoppel precludes the possibility that she could prevail.

## IV. The Class Action

Although Alston has filed a class action claim, she has not sought, nor has this Court granted, class certification. As a result, Alston is the only named representative for the class claim. Because Alston has not stated a viable cause of action as to that claim, the "putative class lacks a representative," and thus "cannot be certified and its claims cannot survive." *Great Rivers Co-Op of Se. Iowa v. Farmland Indus., Inc.*, 120 F.3d 893, 899 (8th Cir. 1997). The class action is therefore dismissed.

## V. Alston's Motion for Partial Summary Judgment

As part of her opposition to Trans Union's Motion to Dismiss, Alston filed a Motion for Partial Summary Judgment. Because the Court has determined that Alston cannot proceed with her claims against Trans Union, it necessarily denies her Motion for Partial Summary Judgment.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are GRANTED, and Alston's Motion for Partial Summary Judgment as to Trans Union is DENIED. A separate Order shall issue.

Date: September 22, 2016

THEODORE D. CHUANG
United States District Judge